| | | |
|---|---|---|
| CARLTON SPEER, MALENA DENNIS, and ZACHARIAH DUNCAN, on their own behalf and on behalf of all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| V. | ) ) | No.: |
| UCOR LLC, | ) ) | JURY DEMANDED |
| Defendant. | ) ) ) | |

## VERIFIED CLASS ACTION COMPLAINT

Come now the Plaintiffs, Carlton Speer, Malena Dennis, and Zachariah Duncan, on behalf of themselves and those similarly situated, and for their Complaint against Defendant UCOR LLC, state the following:

### SUMMARY OF THE CASE

1.      This is a class action lawsuit brought against UCOR LLC ("UCOR" or "Defendant") to remedy the illegal discrimination to which its employees who have requested religious accommodations from its COVID-19 vaccine mandate have had to endure.

2.      UCOR decided that unvaccinated employees—even those who UCOR admits have sincerely held religious objections to the vaccine—were to be terminated from their employment despite UCOR's offering the exact accommodations to other protected groups as Plaintiffs requested here.

1

3.     UCOR's discriminatory actions left Plaintiffs and those similarly situated with the formidable task of choosing between their faith and their jobs.  In so doing, UCOR has violated Title VII by discriminating against Plaintiffs based on their religious beliefs and failing to provide reasonable accommodations to Plaintiffs' sincerely held religious beliefs.

4.     In the alternative, UCOR's discriminatory actions constitute a violation of the Religious Freedom and Restoration Act, 42 U.S.C. § 2000bb through 42 U.S.C. § 2000bb-4 ("RFRA").

## PARTIES, JURISDICTION, AND VENUE

5.     Plaintiff Carlton Speer is an adult citizen and resident of Knox County, Tennessee.

6.     Plaintiff Malena Dennis is an adult citizen and resident of Knox County, Tennessee.

7.     Plaintiff Zachariah Duncan is an adult citizen and resident of Roane County, Tennessee.

8.     Defendant UCOR is a Tennessee limited liability company but lists its principal office as 20501 Seneca Meadows Parkway, Suite 3000, Germantown, Maryland 20876-7016. UCOR can be served with process via its registered agent, CT Corporation System, at the following address:  300 Montvue Road, Knoxville, Tennessee 37919.

9.     UCOR is a contractor for the United States Department of Energy ("DOE") and provides environmental cleanup services at the East Tennessee Technology Park, the Oak Ridge National Laboratory, and the Y-12 National Security Complex.  UCOR's stated purpose is to perform work under the Oak Ridge National Laboratory Operations Clean-Up Enterprise located at the DOE's Oak Ridge National Laboratory in Oak Ridge, Tennessee.

10.     UCOR contracts with many subcontractors, including, *inter alia*, Pinnacle Specialty Group, Inc., that provide project and contract management for professional, technical, engineering and support services.

2

11.     Employees of subcontractors such as Pinnacle Specialty Group, Inc., while under contract with UCOR, effectively are employed by UCOR because UCOR controls the manner and method of their work, has the ability to fire and discipline them, promulgates work rules and conditions of their employment (such as a vaccine mandate), and supervises their day-to-day work.  UCOR is a joint employer with respect to subcontracted employees over whom UCOR controls the terms and conditions of those employees' employment.

12.     This case arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* and, in the alternative, the Religious Freedom and Restoration Act, 42 U.S.C. § 2000bb through 42 U.S.C. § 2000bb-4.

13.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 42 U.S.C. § 2000e-5(f).

14.     Venue is proper pursuant to, *inter alia*, 42 U.S.C. § 2000e-5(f).

15.     Plaintiffs timely filed with the EEOC charges of religious discrimination reflecting intent to bring suit as a class, received a Notice of Rights on September 19, 2022, and timely filed this suit within the prescribed period.

## FACTUAL BASIS[1]

### A.  COVID-19 and UCOR's Response

16.     With the onset of the COVID-19 pandemic in the spring of 2020, UCOR began implementing various mitigation procedures for its employees and subcontractors, including requiring many employees to work from home.  Other safeguards it established included mandated mask wearing, social distancing, frequent COVID-19 testing, and COVID-19 antibody testing.  Necessarily, UCOR created and implemented the infrastructure to support and fulfill

---

[1] As evidenced by each Plaintiff's declaration attached to and incorporated into this Complaint as **Exhibit 1**, Plaintiffs affirm that the facts herein are true and correct to the best of their knowledge.

3

such measures, including the software foundation required for employees to work from home and the personnel and technology infrastructure required to frequently test employees for COVID-19 and/or antibodies, and to enforce a company-wide on-site mask mandate.

17.     Within the United States, three vaccines have been created to combat COVID-19. The Food and Drug Administration ("FDA") issued an Emergency Use Authorization ("EUA") for the Pfizer BioNTech vaccine on December 1, 2020, and another for the Moderna vaccine on December 18, 2020. In February 2021, the FDA issued an EUA for the Johnson & Johnson vaccine.

**B.     UCOR's Vaccine Mandate and Plaintiffs' Requests for Accommodations**

18.     On August 26, 2021, UCOR's President and CEO Ken Rueter announced that it would be requiring all of UCOR's nearly 2,000 employees and subcontracted employees, as a term and condition of employment, to be fully vaccinated against COVID-19. Absent an exemption for medical/disability or religious reasons, any employee who refuses the vaccine was to be terminated.

19.     UCOR announced it would consider requests for medical and/or religious exemptions on a case-by-case basis and at its discretion.

20.     Defendant established November 1, 2021, as the deadline for all employees to prove to UCOR that they had obtained their final dose of the vaccine.

21.     Each named Plaintiff – Malena Dennis, Carlton Speer, and Zachariah Duncan – submitted requests for a religious accommodation through UCOR's designated COVID-19 vaccine exemption system.

22.     In each of his and her accommodation requests, Plaintiffs explained their belief that the COVID-19 vaccines—as well as all other vaccines—were developed (either directly or through testing) using fetal cell lines derived from aborted fetal tissue and that it would be sinful

4

to interject such products into their bodies. They believe a Christian's body and its surrender to God is a form of spiritual worship. (*See, e.g.*, Romans 12:1). Indeed, Plaintiffs consistently elect not to receive cell-based vaccines due to these beliefs and have done so throughout their adult lives.

23.     Each Plaintiff requested an accommodation to include, *inter alia*, the ability to work from home, or alternatively, he or she would agree to abide by increased safety protocols such as mask wearing and/or face shields, social distancing, frequent COVID-19 testing, and COVID-19 antibody testing.

24.     Plaintiffs spoke to and became aware of other employees who share similar deeply held religious beliefs and who, like them, requested accommodations that would substantially reduce any and all risk of transmitting COVID-19 to their coworkers.

25.     UCOR evaluated and concluded that each Plaintiff – and upon information and belief, each of their coworkers who requested religious exemptions – were indeed sincere in their deeply held religious beliefs regarding the vaccine.

26.     Contemporaneously, UCOR was considering multiple employees' requests for disability-related reasonable accommodations. Specifically, employees with disabilities requested, like Plaintiffs here, that they be exempted from Defendant's vaccine mandate due to their medical condition. Many of those employees also proposed as a reasonable accommodation that Defendant allow them to work remotely or under increased safety protocols such as masking and frequent testing.

27.     With respect to the employees seeking disability-related accommodations, UCOR determined those accommodations to be reasonable and, in fact, accommodated many such employees.

5

28.     However, as to each employee who requested accommodation on religious grounds, UCOR denied the accommodation.

29.     Upon information and belief, as it pertains to employees requesting an exemption to Defendant's vaccine policy because of their sincerely held religious beliefs, UCOR rejected each and every employee's request. This is true despite UCOR's acknowledgment of the sincerity of each person's deeply held belief.

30.     Defendant's proffered justification was that accommodating these employees' sincerely held religious beliefs would cause an undue hardship – despite that it approved identical accommodations to employees whose request was based on a disability, and despite the fact that employees had worked under these conditions (e.g., remotely, heightened safety protocols, etc.) for several months prior to and after the vaccines were developed.

31.     As a result, Plaintiffs and each coworker who shares a religious-based opposition to the vaccine faced the daunting and unacceptable choice of having to sacrifice their religious beliefs or lose the ability to provide for their families.

32.     Plaintiffs, during the initial deliberation phase, were removed from their positions without pay.

33.     On November 1, 2021, Defendant followed through with its threats and terminated Plaintiffs, as well as all other employees who had refused to receive a COVID-19 vaccine based on their sincerely-held religious beliefs.

34.     Being terminated from their employment significantly impacted – personally and professionally – Plaintiffs and their similarly situated coworkers.

## CLASS ALLEGATIONS

35.     Plaintiffs reincorporate into this section the above averments.

6

36.     Plaintiffs bring their claims as a class action under Federal Rules of Civil Procedure 23(a) and (b).

37.     Through this action, Plaintiffs seek to represent a class of all UCOR employees and subcontracted employees who have requested accommodations, including an exemption from Defendant's vaccine mandate, based on their sincerely held religious beliefs and with respect to whom Defendant violated their legal rights by denying such accommodations.

38.     Moreover, Plaintiffs seek to represent a subclass of all UCOR employees and subcontracted employees who have a sincerely held religious objection to receipt of the COVID-19 vaccine, requested an exemption because of such belief, had such exemption request denied, and subsequently received the vaccine despite their sincerely held religious belief out of fear of losing their livelihood.

39.     By issuing a uniform denial of all religious-based accommodation requests and subsequently terminating each employee who refused to receive a COVID-19 vaccination based on their sincerely-held religious beliefs, UCOR's legal violations extend to the entire class.

40.     Joinder of all members of the class would be impractical due to the numerosity of the class.  At this time, the exact class size is unknown to Plaintiffs; however, it is expected to exceed fifty (50) employees.

41.     Common questions of law and fact apply to all members of the class.  Such questions include, *inter alia*:

    a.  Did UCOR comply with Title VII's requirement that it consider each member's accommodation request?

    b.  Did UCOR comply with Title VII's requirement that it provide reasonable accommodations to those employees with sincerely held religious beliefs?

c. Were the accommodations requested by the class members reasonable, especially in light of the fact that UCOR granted identical accommodations to numerous other employees when their requests were not religious-based?

d. Can Defendant meet its burden of proof that granting reasonable accommodations to the members would have caused an undue hardship?

e. Has UCOR substantially burdened the members' free exercise of religion under the RFRA by requiring the vaccination while claiming (variously) that such was required by the DOE?

f. If UCOR was an acting as an instrumentality of the government with respect to the vaccine mandate, did the policy further a compelling governmental interest?

g. If the policy did further a compelling governmental interest, was it the least restrictive means of furthering the interest?

42. Plaintiffs' claims are typical of, if not identical to, the claims of the class because they, like the class members, (1) requested accommodations based on their sincerely held religious beliefs, (2) UCOR determined their beliefs to be sincerely held, (3) UCOR denied those requests despite allowing the same accommodations for another group of employees, and (4) refused to consider on a case-by-case basis whether such request could be accommodated.

43. For those reasons, Plaintiffs will fairly and effectively protect the interest of the entire class.

44. The questions of law and fact which are common to the members of the class predominate over any questions affecting only individual members, and a class action is the most suitable method to efficiently adjudicate Plaintiffs' claims. Joinder of all members of the class is impracticable and judicially inefficient.

## CAUSES OF ACTION

**Count 1:  Title VII of the Civil Rights Act of 1964 – Religious Discrimination**

45.     Plaintiffs incorporate by reference the paragraphs above.

46.     Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a), makes it unlawful for an employer to discharge or otherwise discriminate against an employee on the basis of religion.

47.     Here, Plaintiffs held sincere religious beliefs which caused their respective objections to receiving the vaccine.  UCOR has conceded this fact.

48.     Plaintiffs were otherwise qualified for their respective positions, as evidenced by their years of employment within their roles.

49.     UCOR was aware of Plaintiffs' sincerely held religious beliefs and their corresponding objection to the COVID-19 vaccine mandate.

50.     Plaintiffs were subject to adverse employment actions as Defendant progressively disciplined Plaintiffs for refusing to be vaccinated, and on November 1, 2021, Plaintiffs were terminated for their refusal to receive the vaccine based on their religious objections thereto.

51.     All other employees – i.e., those who do not have similar religious beliefs as Plaintiffs – were and are being treated much more favorably than Plaintiffs.  Indeed, UCOR has granted an entire group of employees the precise accommodations Plaintiffs requested.

52.     UCOR has and continues to willfully discriminate against Plaintiffs because of their religious beliefs, which is a blatant violation of Title VII.


**Count 2:  Title VII of the Civil Rights Act of 1964 – Failure to Accommodate**

53.     Title VII also imposes a duty upon employers to reasonably accommodate the sincerely held religious beliefs of its employees.  42 U.S.C. § 2000e(j).

9

54.     As set forth above, Plaintiffs hold sincere religious beliefs that preclude them from receiving a COVID-19 vaccine.

55.     Plaintiffs informed UCOR of those beliefs and requested religious accommodations from the vaccine mandate.  In response to these requests, UCOR accepted that Plaintiffs' religious beliefs and objections to being vaccinated were sincerely held.

56.     UCOR informed Plaintiffs that it would not accommodate their religious objections and instead subjected Plaintiffs to progressive discipline and eventual termination on November 1, 2021.

57.     As to the putative subclass members, UCOR informed them that it would not accommodate their religious objections and forced them to make the impossible decision of being terminated or violating their religious beliefs by receiving the vaccine.

58.     UCOR's action was to issue a blanket, across-the-board, unappealable rejection of each religious-based exemption request.

**Count 3:  Challenge to De Minimis Burden Standard Established in _Trans World Airlines, Inc. v. Hardison_**

59.     Pleading in the alternative that Defendant can prove that providing Plaintiffs *any* reasonable accommodation for their sincerely held religious beliefs would have imposed a de minimis hardship on Defendant, which Plaintiffs deny, Plaintiffs aver Title VII imposes liability on Defendant unless Defendant can prove the hardship is "*undue*," not de minimis.  42 U.S.C. §2000e(j) (2022).

60.     In what was "almost [ ] an afterthought," the Supreme Court in *Trans World Airlines, Inc. v. Hardison* first spoke of undue hardship in terms of a de minimis standard.  *See,*

10

*e.g.*, *Small v. Memphis Light, Gas & Water*, 952 F.3d 821 (6th Cir. 2020) (Thapar, J., concurring) (analyzing *Hardison*, 432 U.S. 63 (1977)).

61.     Pleading alternatively that each and every reasonable accommodation posed only a de minimis hardship on Defendant, such accommodations did not place undue hardship on Defendant, and therefore, Defendant violated Title VII by not affording Plaintiffs a reasonable accommodation for their sincerely held religious beliefs.

62.     To the extent *Trans World Airlines, Inc. v. Hardison* would allow Defendant to refuse Plaintiffs a reasonable accommodation for their sincerely held religious beliefs by proving only a de minimis burden on its business, such holding is contrary to the express language of Title VII, the ordinary meaning of "undue hardship," and the application of the phrase in other legal contexts.  The Supreme Court should grant certiorari and overrule *Hardison*.

63.     Plaintiffs aver they are entitled to a reversal or modification of such law and hereby raise and preserve such claim for appellate review.


**Count 4:  Religious Freedom Restoration Act**

64.     Pleading in the alternative, Plaintiffs allege that UCOR has violated the RFRA through its vaccine mandate, which placed a substantial burden on Plaintiffs' free exercise of religion without being narrowly tailored to further a compelling government interest.

65.     The RFRA mandates that, "[i]n general Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b).  42 U.S.C. § 2000bb-1(a).

66.     Subsection (b) provides the exception, stating that "Government may substantially burden a person's exercise of religion *only* if it demonstrates that application of the

11

burden to the person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(b) (emphasis added).

67.     The statute defines "government" to include any "branch, department, agency, instrumentality, and official (or other person acting under color of law) of the United States, or of a covered entity." 42 U.S.C. § 2000bb-2(1).

68.     UCOR is a contractor for the DOE with the sole stated purpose of performing work under the Oak Ridge National Laboratory Operations Clean-Up Enterprise located at the DOE's Oak Ridge National Laboratory in Oak Ridge, Tennessee.

69.     UCOR claims to be subject to workplace health and safety standards promulgated by the DOE and the U.S. Occupational Safety and Health Administration (OSHA) and that such standards required UCOR to force its workforce to receive COVID-19 vaccinations or be terminated.[2]  Indeed, UCOR claims that since its onset, UCOR's policies and plans for responding to the pandemic were modified based on direction from the DOE and guidance from the Centers for Disease Control.[3]

70.     Moreover, UCOR claims or implies that it was subject to two Executive Orders issued by President Biden on September 9, 2021, mandating that all federal employees and contractors be vaccinated.[4]

71.     By and through its contractual relationship with the federal government and the execution of federal requirements applicable to federal employees and contractors, UCOR can

---

[2] See Declaration of Wolfley ([Doc. 17, Page ID # 1], Case 3:21-cv-00368-CEA-HBG), dated November 16, 2021. The declaration is attached and incorporated herein as **Exhibit 2**.
[3] *See* Exhibit 2.
[4] *Id*.

12

fairly be said to have been acting under color of law regarding its implementation of its vaccination-or-termination policy.

72.     Specifically, UCOR's violative policy resulted from governmental policy[5] and UCOR can fairly be said to be a governmental actor under the RFRA.[6]

73.     As an "instrumentality . . . acting under color of law of the United States [ ] or of a covered entity," UCOR has substantially burdened Plaintiffs' exercise of religion by and through its vaccine mandate by presenting Plaintiffs with the daunting and unforgivable task of choosing between betraying a sincere religious conviction and being terminated.

74.     UCOR's policy was not done in furtherance of a compelling governmental interest. This is especially true when considering that UCOR issued a blanket denial of all religious exemption requests, rather than demonstrating as to each Plaintiff and putative class member a compelling interest to vaccinate each such person, as is required under the RFRA.

75.     As an example, none of the accommodation denials issued by UCOR assessed – on an individual basis – the age, fitness, health, or natural immunity of the applicant for accommodation.  Nor did UCOR's denials assess whether the particular applicant was acutely vulnerable to complications from COVID-19 or whether the circumstances of an applicant's position are so likely to result in transmission to other employees as to warrant the suspension of that applicant's free exercise of religion.  Instead, a universal denial was issued to all who requested an accommodation based on their religious beliefs.

76.     What's more, UCOR's policy was certainly not the least restrictive means of furthering any compelling governmental interest – as evidenced, in part, by UCOR's granting of the very same accommodations requested by Plaintiffs to members of other protected classes.

---

[5] *See id.*
[6] *See Sutton v. Providence St. Joseph Medical Center*, 192 F.3d 826, 835 (9th Cir. 1999) (describing the analytical framework used in considering whether a person is acting under color of law under the RFRA).

13

77.    Among other methods, UCOR could have accommodated Plaintiffs' requests for accommodation by, *inter alia*:

   a. Requiring testing to determine infection;

   b. Temperature checks and/or other screening to determine infection;

   c. Permitting Plaintiffs to demonstrate that they have natural and effective immunity vis-à-vis COVID-19 antibodies;

   d. Requiring isolation to keep Plaintiffs away from those with COVID-19;

   e. Allow Plaintiffs to perform the position via remote or telework, outside of contact with other employees and subcontractors; and/or

   f. Given the significant level of vaccine compliance within UCOR relative to those who objected based on the religious beliefs, accommodating the few numbers of religious exemption requests by providing an exemption (which UCOR is already doing for medical exemptions) is not a burden.

78.    Because its vaccine mandate did not further a compelling governmental interest, and because it was not the least restrictive means of furthering any compelling governmental interest, UCOR's actions, taken under color of law, constitute a clear violation of the RFRA.

### DAMAGES

79.    Plaintiffs, as a result of Defendant's unlawful discrimination, have endured loss of income and employment, potential eviction and/or homelessness, the loss of employer-based health insurance, the potential inability to pay for life-saving medical treatments, and severe emotional distress such as anxiety and sleeplessness.

14

80.     Other putative plaintiffs endured a substantial burden on their free exercise of religion because of UCOR's actions, causing such putative plaintiffs to make the harrowing decision to abide by the structures of the religious beliefs or keep their job.

81.     Furthermore, as a direct and proximate result of Defendant's unlawful and willfully discriminatory behavior, Plaintiffs, and the similarly-situated class members have and will continue to suffer humiliation, embarrassment, emotional distress, lost wages and benefits, loss of earning capacity, loss of future income, and other benefits and privileges of employment.

## ENTITLEMENT TO IMMEDIATE INJUNCTIVE RELIEF

82.     Plaintiffs are entitled to immediate injunctive relief under the RFRA.  Specifically, Plaintiffs can show a likelihood of success on the merits of their claim, and have and will continue to suffer irreparable injury in the absence of an injunction – namely, the loss of their free exercise of religion.[7]

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for the following relief:

83.     That the Court certify this action as a class action under Federal Rules of Civil Procedure 23(a) and (b).

84.     A judgment that UCOR violated Title VII of the Civil Rights Act of 1964 by illegally discriminating against Plaintiffs and those similarly situated based on their religion, and that such violation was willful and/or reckless;

---

[7] *See Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S.Ct. 63, 67 (2020) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury").

85.     A judgment that UCOR, acting under color of law, violated the RFRA by illegally burdening Plaintiffs' free exercise of religion without furthering a substantial governmental interest;

86.     A temporary restraining order and/or preliminary injunction be issued, followed by a permanent injunction, including reinstatement of Plaintiffs and those similarly situated employees who were terminated for their refusal to receive a COVID-19 vaccine because of their sincerely held religious objections, and preventing UCOR from further violating Title VII and the RFRA, including status reports as set by the Court;

87.     A jury be empaneled to serve as the trier of fact;

88.     An award of all damages entitled to Plaintiffs and those similarly situated, including back pay, reinstatement or front pay, pre-judgment and post-judgment interest, punitive damages, and compensatory damages;

89.     An award of reasonable attorneys' fees and costs; and

90.     An award of all such other and further legal and equitable relief to which Plaintiffs and those similarly situated may be entitled under the facts of this case.

RESPECTFULLY SUBMITTED,


 *s/ Jesse D. Nelson*
JESSE D. NELSON (BPR # 025602)
CLINT J. COLEMAN (BPR # 038413)
GINA M. MODICA (BPR # 037600)
NELSON LAW GROUP, PLLC
10263 Kingston Pike
Knoxville, TN 37922
(865) 383-1053
jesse@nlgattorneys.com
clint@nlgattorneys.com
gina@nlgattorneys.com

*Attorneys for Plaintiffs and Putative Class*

16