UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| CARLTON SPEER, MALENA DENNIS, and ZACHARIAH DUNCAN, individually and on behalf of all others similarly situated, | ) ) ) ) ) | Case No. 3:22-cv-426 |
| | ) | Judge Travis R. McDonough |
| *Plaintiffs*, | ) ) | Magistrate Judge Jill E. McCook |
| v. | ) ) | |
| UCOR LLC, | ) ) | |
| *Defendant*. | ) ) | |

# MEMORANDUM OPINION

Before the Court is Plaintiffs Carlton Speer, Malena Dennis, and Zachariah Duncan's motion to certify a class pursuant to Federal Rule of Civil Procedure 23 (Doc. 18). For the reasons set forth below, the motion (*id.*) will be **DENIED**.

## I. BACKGROUND

Defendant, UCOR LLC, is a business that provides nuclear and environmental cleanup services at the East Tennessee Technology Park, the Oak Ridge National Laboratory, and the Y-12 National Security Complex. (Doc. 12, at 2.)

On August 26, 2021, Defendant announced that it would require all its employees and subcontracted employees to be fully vaccinated against COVID-19 by November 1, 2021. (*Id.* at 4–5.) Defendant stated it would consider requests for medical and religious exemptions on a case-by-case basis, but employees who did not receive an exemption and who still refused to comply with the vaccine requirement would be terminated. (*Id.* at 4.) Defendant required employees to submit an "Exemption Request Form" in which employees described their

religious beliefs and why the belief conflicted with the vaccination requirement. (Doc. 12, at 5.) Defendant considered ninety-eight requests for religious exemptions. (Doc. 19, at 6.) Defendant created an Accommodation Review Committee consisting of human resources staff to evaluate each request.[1] (Doc. 39, at 5.) After receiving an employee's exemption request, a committee member interviewed each employee about the request and potential accommodations. (*Id.* at 6.) A different committee member interviewed each named Plaintiff. (*Id.*) The committee considered each request on a case-by-case basis and evaluated whether the request would result in undue hardship. (*Id.* at 3.) Defendant developed a chart to help determine the impact of potential accommodations on its business. (*Id.* at 6–7.) Defendant considered "weekly testing, enhanced face coverings, mask fit tests, limited task reassignment, job reassignment, work location adjustments, isolation, distancing, leaves of absence, daily self-health checks, and telework" as potential accommodations. (*Id.*) For purposes of the accommodation process, Defendant did not dispute that each religious exemption request was based upon a sincerely held religious belief.[2] (Doc. 30, at 4.)

Plaintiffs Carlton Speer, Malena Dennis, and Zachariah Duncan were employees of Defendant at the time the company's vaccine mandate was enacted, and they requested religious exemptions from the mandate. (Doc 12, at 5.) Plaintiffs are Christians who believe "that the COVID-19 vaccines . . . were developed . . . using fetal cell lines derived from aborted fetal tissues and that it would be sinful to interject [sic] such products into their bodies." (*Id.*)

---

[1] These facts are drawn from the sworn declaration of a UCOR employee, Charles Malarkey, in *Speer v. UCOR, LLC*, No. 3:21-cv-368, 2022 WL 3971036 (E.D. Tenn. Aug. 31, 2022) ("*Speer I*"), to which Defendant cites.

[2] Defendant notes that it "does not concede that [Plaintiffs' objections were based upon a sincerely held religious belief] and will dispute that issue in this action." (Doc. 29, at 5 n.3.)

Defendant rejected Plaintiffs' accommodation requests because it determined the accommodations would cause Defendant undue hardship. (*Id.* at 6.) In fact, Defendant rejected all religious exemption requests based on undue hardship. (Doc 19, at 2.) But it did grant many exemptions based on disability, providing accommodations as a result. (Doc. 12, at 6.) Defendant terminated Plaintiffs and all other employees who refused COVID-19 vaccines based on religious beliefs. (*Id.* at 7.)

On November 29, 2022, Plaintiffs filed a putative class-action complaint, asserting claims against Defendant pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb, *et seq*. (Doc. 1.) Plaintiffs filed a motion to certify the class on January 1, 2023. (Doc. 18.) Plaintiffs seek to certify a class consisting of:

> All employees, staff augmentation employees, and subcontractors who (i) were subject to UCOR's COVID-19 vaccine mandate, (ii) who submitted an accommodation/exemption request based on their sincerely held religious belief opposing the receipt of the vaccine, (iii) whose request for an accommodation/exemption was denied and (iv) who subsequently suffered an adverse employment action for their refusal to receive and provide proof of having received the vaccine."

(Doc. 34, at 2.) On February 13, 2023, the Court granted Defendant's motion to dismiss Plaintiffs' RFRA claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 25.) As a result, the only claim remaining is Plaintiffs' Title VII claim for failing to accommodate their

religious beliefs.³ ⁴  (Doc. 12, at 9–10.)  Plaintiffs' motion for class certification is now ripe for the Court's review.

II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 23 allows "members of a class" to sue or be sued "on behalf of all members" of the class.  Fed. R. Civ. P. 23(a).  "The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011).  For a class to be certified, the plaintiffs must prove they meet the requirements of both Rule 23(a) and 23(b).  *See Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) ("No class that fails to satisfy all four of

---

³ In what Plaintiffs style as "Claim One," they allege a separate "Religious Discrimination" claim.  (Doc. 12, at 9–10.)  However, Claim One is the same failure-to-accommodate claim they allege in "Claim Two."  *See Bolden v. Lowes Home Centers, LLC*, 783 F. App'x 589, 597 (6th Cir. 2019) (setting forth failure-to-accommodate elements of (1) a sincerely held belief conflicting with an employment requirement, (2) notice to employer, (3) and an adverse action for non-conformance).  In Claim One, Plaintiffs allege:  (1) "[they] held sincere religious beliefs," (2) "[Defendant] was aware of Plaintiffs' sincerely held religious beliefs and their corresponding objection to the COVID-19 vaccine mandate," and (3) "Plaintiffs were subject to adverse employment actions as Defendant progressively disciplined Plaintiffs for refusing to be vaccinated."  (Doc. 12, at 9–10.)  Plaintiffs further allege that Defendant failed to reasonably accommodate them in the manner that they did employees who requested accommodations based on disability.  (*Id.*)  This is a failure-to-accommodate claim, and the Court will analyze it as one.

⁴ Insofar as Plaintiffs argue that it is discrimination for Defendant to treat religious-exemption requests differently from disability-exemption requests, the standards for religious accommodation and disability accommodation *are* different.  *See Groff v. DeJoy*, 600 U.S. 447, 470–73 (2023) (refusing to adopt the ADA accommodation standard for Title VII and "leav[ing] it to the lower courts to apply our clarified context-specific standard").  Therefore, a determination that Defendant treated religious exemption requests less favorably than disability-based requests would not prove that Defendant violated Title VII.  This is especially true since, at the time Defendant evaluated Plaintiffs' requests, employers were required to make greater efforts to accommodate employees under the ADA than under Title VII.  *Compare* 42 U.S.C. § 12111(10)(A) ("The term 'undue hardship' means an action requiring significant difficulty or expense.") *with Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 84 (1977) (finding that undue hardship under Title VII is anything more than a "de minimis cost"); *see Eckles v. Consol. Rail Corp.*, 94 F.3d 1041, 1049 (7th Cir. 1996) ("The Senate and House Reports on the ADA clarified Hardison's statement that only de minimis costs were required for reasonable accommodation does not apply under the ADA.").

the prerequisites of Rule 23(a) may be certified, and each class meeting those prerequisites must also pass at least one of the tests set forth in Rule 23(b).").

"Rule 23 does not set forth a mere pleading standard." *Dukes*, 564 U.S. at 350. The burden is on the party seeking certification to "affirmatively demonstrate his compliance with the Rule . . . he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Id.* "If the parties disagree over a fact critical to a Rule 23 requirement . . . plaintiffs cannot rest on their complaint," rather they must offer "significant proof" of disputed facts. *Doster v. Kendall*, 54 F.4th 398, 432 (6th Cir. 2022) (quoting *Dukes*, 564 U.S. at 353). Often, the "rigorous analysis" required of courts at the class-certification stage "will entail some overlap with the merits of the plaintiff's underlying claim." *Dukes*, 564 U.S. at 351. However, Rule 23 does not give courts "license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013) (citing *Dukes*, 564 U.S. at 351 n.6). "Merits questions may be considered to the extent— but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* (citing *Dukes*, 564 U.S. at 351 n.6).

### III. ANALYSIS

#### A. Rule 23(a)

To proceed as a class under Rule 23(a), a plaintiff seeking class certification must first show that:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

5

Fed. R. Civ. P. 23(a); *see Dukes*, 564 U.S. at 349 (describing the requirements as "numerosity, commonality, typicality, and adequate representation"). Plaintiffs must demonstrate that they meet all four requirements. *See Davis v. Cintas Corp.*, 717 F.3d 476, 483 (6th Cir. 2013) ("If the plaintiff does not satisfy each of these requirements, her class claim fails at the threshold."); see also *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996) ("Subsection (a) of Rule 23 contains four prerequisites which must all be met before a class can be certified"). Once these four prerequisites are met, then "the party seeking certification must also demonstrate that it falls within at least one of the subcategories of Rule 23(b)." *Id.*

Here, Plaintiffs have not carried their burden of showing that Rule 23(a)'s numerosity requirement is satisfied.[5]

### *i.* **Numerosity**

To be entitled to class certification, a plaintiff must show that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). This is "numerosity." *Dukes*, 564 U.S. at 349. In some cases, the "sheer number of potential litigants in a class, especially if it is more than several hundred or thousand, can be the only factor needed to satisfy [numerosity]." *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004); *see, e.g., Serrano v. Cintas Corp.*, No. CIV. 04-40132, 2009 WL 910702, at *4 (E.D. Mich. Mar. 31, 2009), *aff'd sub nom. Davis v. Cintas Corp.*, 717 F.3d 476 (6th Cir. 2013) (finding numerosity satisfied when "the proposed class would contain thousands of members").

However, "while large numbers may, in many cases, indicate impracticability of joinder, numbers are not a perfect predictor." *Turnage v. Norfolk S. Corp.*, 307 F. App'x 918, 921 (6th

---

[5] Since numerosity is not satisfied, the Court need not analyze whether Plaintiffs satisfy the commonality, typicality, or adequacy requirements. *See* Davis, 717 F.3d at 483 (noting that all four requirements of Rule 23(a) must be proven).

Cir. 2009). The Sixth Circuit has cautioned that "the real issue is whether the plaintiff seeking class certification has demonstrated *impracticability of joinder*." *Id.* (emphases added). Showing that joinder is impracticable is case-specific and requires close examination of the proposed class. *Gen. Tel. Co. of the Nw. v. Equal Emp. Opportunity Comm'n*, 446 U.S. 318, 330 (1980). When evaluating impracticability of joinder, courts should consider "ease of identifying members and determining addresses, ease of service on members if joined, and geographical dispersion" in addition to sheer numbers. *Turnage*, 307 F. App'x at 921. Furthermore, "impracticability of joinder must be positively shown, and cannot be speculative," *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 541 (6th Cir. 2012) (citations omitted), and if the parties dispute numerosity, "the plaintiff must offer proof" showing impracticability of joinder. *Doster*, 54 F.4th at 432.

Here, the parties dispute numerosity. (Doc. 29, at 10.) Plaintiffs assert, and Defendant does not dispute, that ninety-eight employees submitted religious-exemption requests, all of which Defendant denied. (Doc. 19, at 6; Doc. 29, at 5.) Plaintiffs initially sought to certify a class including all ninety-eight employees (Doc. 18, at 1) but now seek to certify a class consisting of only those employees who suffered an adverse employment action due to their refusal to be vaccinated (Doc. 34, at 1–2). However, Plaintiffs have not provided the Court with any evidence whatsoever regarding how many employees suffered an adverse employment action due to their refusal to be vaccinated. Instead, Plaintiffs merely suggest that "while the exact class size is unknown, the Court can presume that the class size is, at the very least, above fifty."[6] (Doc. 34, at 6.)

---

[6] While neither party references this fact in their briefings, Defendant provided the named Plaintiffs' verified responses to interrogatories in which Plaintiffs' counsel asserts that forty-four people "have expressed a desire to be represented by the class and by class counsel." (Doc. 39-5,

To the contrary, the Court cannot presume compliance with Rule 23(a). *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) (stating that courts must demand "actual, not presumed, conformance with Rule 23(a)"). Despite Plaintiffs' claims otherwise, this is far from the type of class action for which "common sense" dictates impracticability of joinder. (Doc. 34, at 6) (quoting *Talbott v. GC Services Ltd. P'ship*, 191 F.R.D. 99, 102 (W.D. Va. 2000)). Plaintiffs are not seeking to represent hundreds or thousands of people, and courts routinely reject class certification of classes consisting of a relatively small number of potential plaintiffs. *See Gen. Tel. Co. of the Nw.*, 446 U.S. at 330 (suggesting that a class of fifteen members "would be too small to meet the numerosity requirement"); *see also id.* at 330 n.14 (collecting cases in which courts have refused to certify classes consisting of fewer than fifty members).

Given the undisputed small size of the potential class, it is critical that Plaintiffs not treat proving impracticability of joinder as merely a formality. Plaintiffs have had ample opportunity to conduct class discovery and investigate the true size of the putative class since they initially filed their complaint 2021. *See generally Speer I*, 2022 WL 3971036. But they present no such evidence to the Court. This failure weighs decisively against accepting Plaintiffs' bare assertion that numerosity is satisfied. *See Turnage*, 307 F. App'x at 922 (rejecting a plaintiff's class size estimate as too speculative when "[Plaintiff] has not produced concrete evidence of numerosity despite having had ample opportunity to do so").

Plaintiffs have presented no evidence of any other issues suggesting that joinder is impracticable, such as difficulty identifying class members or geographic dispersion of class members. *See id.*, 307 F. App'x at 921. Class members would be easy to identify since

---

at 14–15.) However, there is no evidence that all of these forty-four individuals actually fall within the narrowed class definition, only that they expressed interest in being a part of the class.

Defendant certainly has records of all the employees that it terminated as evidenced by the notices of termination that Plaintiffs have provided. (*See e.g.*, Doc 34-3.) Furthermore, Defendant only operated sites in Oak Ridge, Tennessee, so geographic dispersion of class members cannot make joinder impracticable. (Doc. 12, at 2.)

Plaintiffs have not carried their burden of showing that joinder is impracticable.

### B. Rule 23(b) Requirements

Even if Plaintiffs were to satisfy Rule 23(a), they still have to satisfy at least one of the three paths to certification under Rule 23(b). *Coleman v. Gen. Motors Acceptance Corp.*, 296 F.3d 443, 446 (6th Cir. 2002). Plaintiffs move to certify the class under 23(b)(1)(A), 23(b)(2), and 23(b)(3). (Doc. 19 at 11–12.) However, Plaintiffs have not shown any of these paths is appropriate.

#### i. Rule 23(b)(1)(A)

Rule 23(b)(1)(A) is applicable in cases where a defendant "is obliged by law to treat the members of the class alike." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). To proceed under 23(b)(1)(A), a plaintiff must show that prosecuting separate actions by individual class members would create a risk of "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." Fed. R. Civ. P. 23(b)(1)(A). However, "the fact that some plaintiffs may be successful in their suits against a defendant while others may not, is clearly not a ground for invoking Rule 23(b)(1)(A)." *In re Bendectin Prod. Liab. Litig.*, 749 F.2d 300, 305 (6th Cir. 1984); *see also Emps. Ins. of Wausau v. Fed. Deposit Ins. Corp.*, 112 F.R.D. 52, 54 (E.D. Tenn. 1986) ("Rule 23(b)(1)(A) does not include a situation in which the risk of inconsistent results in

9

Case 3:22-cv-00426-TRM-JEM   Document 52   Filed 11/06/23   Page 9 of 20   PageID #: 1128

a series of individual actions would only mean that [a defendant] might . . . have to pay damages to some claimants but not to others.").

Plaintiffs argue that litigating the claims of the class members individually "will undoubtedly create inconsistent and varying adjudications and establish incompatible standards of conduct for UCOR," (Doc 19, at 11), because "one court may find that [Defendant] may enforce its vaccine mandate over religious objections and another court finds it may not." (Doc. 34, at 15 (quoting *Doster v. Kendall,* 342 F.R.D. 117, 128 (S.D. Ohio 2022).)  This is not true in the Title VII context.  Since the reasonableness of an accommodation and the undue hardship an accommodation would cause depend on facts specific to each employee, a court could not give Defendant permission to have a policy of *always* denying religious accommodations.  *See Smith v. Pyro Min. Co.*, 827 F.2d 1081, 1085 (6th Cir. 1987).  As explained below, *see infra* Section III.B.iii.a., an employer must evaluate each employee's accommodation request individually to determine if an accommodation is reasonable.[7]

Furthermore, it is not an inconsistent obligation for Defendant to have to reinstate or pay damages to one employee but not another.  *See Snead v. CoreCivic of Tenn., LLC*, No. 3:17-cv-0949, 2018 WL 3157283, at *14 (M.D. Tenn. June 27, 2018) (stating that Rule 23(b)(1)(A) "requires more than a risk that separate judgments would oblige [defendant] to pay damages to some class members but not to others") (quotations and citations omitted).  Here, some employees may prove their case while others may not.  One employee might have had a sincerely held religious belief; another might not have.  One employee's duties might have been compatible with a reasonable accommodation; another employee's duties might not have.

---

[7] Plaintiffs are aware of this fact, as they allege Defendant wrongly refused to consider on a case-by-case basis whether their beliefs could be accommodated.  (Doc. 12, at 9.)

Plaintiffs have not established that they can proceed under 23(b)(1)(A).

### ii. Rule 23(b)(2)

A class may be certified under 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Whether a class action can proceed under 23(b)(2) depends on whether "the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Dukes*, 564 U.S. at 360 (citations omitted). The Sixth Circuit has noted that 23(b)(2) is a "narrow" path which "does not permit plaintiffs to seek relief that would require a court to issue different injunctions . . . on a member-by-member basis." *Doster*, 54 F.4th at 439 (quotations and citations omitted). Furthermore, "23(b)(2) does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Dukes*, 564 U.S. at 360–61. Therefore, 23(b)(2) is not appropriate when monetary damages are anything more than "incidental to the injunctive and declaratory relief" that a class seeks. *Davis*, 717 F.3d at 491 (citations omitted).

Plaintiffs assert that the class can be certified under 23(b)(2) since Defendant refused to accommodate all class members. (Doc. 19, at 11–12.) However, the injunctive remedy Plaintiffs seek is reinstatement (Doc. 12, at 17), and reinstatement will only be appropriate if an accommodation was reasonable as to an individual employee.[8] *See Smith*, 827 F.2d at 1085. Since this requires an individualized analysis, *see infra* Section III.B.iii.a., not an assessment of whether Defendant acted reasonably towards the class as a whole, the Court cannot grant

---

[8] This is unlike the class certified in *Doster*, where the plaintiffs sought to enjoin the Air Force's system of evaluating accommodation requests, which could be done via a single injunction. 54 F.4th at 440.

11
Case 3:22-cv-00426-TRM-JEM   Document 52   Filed 11/06/23   Page 11 of 20   PageID #: 1130

reinstatement to all employees in one stroke. Moreover, Plaintiffs seek significant individualized damages in the form of "back pay, reinstatement or front pay, pre-judgment and post-judgment interest, punitive damages, and compensatory damages." (Doc. 12, at 17.) Plaintiffs note that their damages would include "loss of income and employment, potential eviction and/or homelessness, the loss of employer-based health insurance, the potential inability to pay for life-saving medical treatments, and severe emotional distress such as anxiety and sleeplessness." (*Id.* at 16.) Such substantial damages are not incidental. *See e.g., Davis*, 717 F.3d at 491 (rejecting certification under 23(b)(2) when a plaintiff sought backpay).

Plaintiffs have not established that they can proceed under the narrow path of 23(b)(2).

### iii. Rule 23(b)(3)

Class certification under Rule 23(b)(3) requires a plaintiff to establish "predominance" and "superiority." Fed. R. Civ. P. 23(b)(3). "Predominance" means "that the questions of law or fact common to class members predominate over any questions affecting only individual members." *Id.* "Superiority" means "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.*

#### a. Predominance

For a class be certified under 23(b)(3), a district court "must find that questions of law or fact common to class members predominate over any questions affecting only individual members." *Tyson Foods v. Bouaphakeo*, 577 U.S. 442, 452 (2016) (citations omitted). The predominance requirement is "far more demanding" than the commonality requirement of Rule 23(a)(2). *Windsor*, 521 U.S. at 623–24; *see also Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013) ("If anything, Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a).").

To evaluate predominance, "a court must first characterize the issues in the case as common or individual and then weigh which predominate." *Martin v. Behr Dayton Thermal Prods., LLC*, 896 F.3d 405, 413 (6th Cir. 2018). The court must ask "whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Bouaphakeo*, 577 U.S. at 453. "Considering whether questions of law or fact common to class members predominate begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011).

Here, Plaintiffs claim that Defendant failed to accommodate their religious beliefs as required by Title VII. (Doc. 12, at 9–10.) To establish a *prima facie* case for failure-to-accommodate under Title VII, a plaintiff must show:

> (1) He holds a sincere religious belief that conflicts with an employment requirement;
> (2) He has informed the employer about the conflict; and
> (3) He was discharged or disciplined for failing to comply with the conflicting employment requirement.

*Bolden*, 783 F. App'x at 597 (citations omitted). To establish the threshold element, a plaintiff must prove to the factfinder "(1) the belief for which protection is sought [is] religious in [a] person's own scheme of things, and (2) [it] is sincerely held." *Redmond v. GAF Corp.*, 574 F.2d 897, 901 n.12 (7th Cir. 1978) (quotations omitted); *see Kent v. Johnson*, 821 F.2d 1220, 1224 (6th Cir. 1987) (applying the test laid out in *Redmond* in the First Amendment context). After a plaintiff establishes a prima facie case, the burden shifts to the employer to show that it could not reasonably accommodate the employee without "undue hardship." *Tepper v. Potter*, 505 F.3d 508, 514 (6th Cir. 2007). If the employer demonstrates that any accommodation would cause undue hardship, then it is not liable, even if no accommodation is provided. *See Smith v. Pyro Min. Co.*, 827 F.2d 1081, 1086 (6th Cir. 1987) ("An employer may nonetheless establish undue

13
Case 3:22-cv-00426-TRM-JEM   Document 52   Filed 11/06/23   Page 13 of 20   PageID #: 1132

hardship without actually putting an accommodation into effect").

The two central questions in this case are therefore: (1) whether each employee's objections to Defendant's vaccine requirement were based on their sincerely held religious beliefs and (2) whether an accommodation could be granted to each employee without undue hardship. These are inherently individualized questions which will predominate over any shared issues.[9]

### 1. Sincerely Held Religious Beliefs

As a threshold matter in a failure-to-accommodate claim under Title VII, a plaintiff must prove that she has a sincerely held religious belief which conflicts with an employment requirement.[10] *Bolden*, 783 F. App'x at 597. This requires a factfinder to determine "(1) whether the belief or practice asserted is *religious* in the person's own scheme of things, and (2) whether it is *sincerely held*." *Kent*, 821 F.2d at 1224 (6th Cir. 1987) (emphases added).[11]

---

[9] In arguing that common issues predominate, Plaintiffs simply assert that "it is clear that common questions of law and fact predominate, and, as such, class certification would achieve economies of time, effort, and expense." (Doc. 34, at 16). Plaintiffs claim these common questions are: "(1) Has UCOR followed a de facto policy of rejecting religious exemptions based on its generalized undue hardship analysis? (2) Has UCOR followed a discriminatory policy of treating religious exemptions less favorably than other exemptions?" (*Id*.) Assuming these questions could further the litigation by establishing whether Defendant individually considered each Plaintiff's exemption request, the only way to answer these questions would be to look to see how Defendant handled the request of each Plaintiff. This would be a fac intensive, individualized inquiry and would certainly not increase the efficiency of litigating Plaintiffs' claims.

[10] Indeed, there can be no religious discrimination without this proof because only beliefs that fall within the statutory definition of "religion" qualify for protection under Title VII. 42 U.S.C. § 2000e(j) ("The term 'religion' includes all aspects of religious observance and practice, as well as belief . . . ."); *see Peterson v. Wilmur Commc'ns, Inc.*, 205 F. Supp. 2d 1014, 1018 (E.D. Wis. 2002) ("As a threshold matter, the plaintiff must show that his or her beliefs constitute a 'religion' under the meaning of Title VII.").

[11] While neither the Supreme Court nor the Sixth Circuit have spoken at length about what it means to have a sincerely held religious belief the Title VII context, both have extensively discussed the issue in the context of the Constitution and the Religious Land Use and

"Religion" is defined broadly under Title VII to include "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j). However, because of this broad definition, what constitutes a "religious belief" is a finding of fact specific to each individual. A factfinder cannot determine if a belief is religious by simply looking to an "external set of forces and rules that compel an individual to act one way or another," such as the official doctrine of a religious sect. *Jones v. First Ky. Nat'l Corp.*, No. 84-5067, 1986 WL 398289, at *4 (6th Cir. July 17, 1986); *see also Yaacov v. Mohr*, No. 16-4361, 2018 WL 6333604, at *2 (6th Cir. June 5, 2018) ("Courts are not arbiters of scriptural interpretation . . . and they must not presume to determine the place of a particular belief in a religion") (quotations and citations omitted). Instead, the question is "whether the belief or practice asserted is 'religious' in the 'person's own scheme of things.'" *Jones*, 1986 WL 398289 at *3 (quoting *United States v. Seeger*, 380 U.S. 163, 185 (1969)).

Similarly, "sincerity is a factual finding." *See Ackerman v. Washington*, 16 F.4th 170, 180 (6th Cir. 2021) (citing *Cavin v. Mich. Dep't of Corr.*, 927 F.3d 455, 459 (6th Cir. 2019). While proving sincerity is generally "not a difficult hurdle," the factfinder "need not take a [plaintiff] at his word" that he is sincere in his beliefs. *Id*. at 180–81. Instead, the factfinder is required "to determine whether the line drawn by the plaintiff between conduct consistent and inconsistent with her or his religious beliefs reflects an honest conviction." *Id*. To do so, factfinders look at factors such as the plaintiff's "length of adherence, knowledge about the

---

Institutionalized Persons Act. *See United States v. Seeger*, 380 U.S. 163, 185 (1969); *see also Cavin v. Mich. Dep't of Corr.*, 927 F.3d 455 (6th Cir. 2019). As the language of "sincerely held religious belief" is identical in the context of Title VII, it is appropriate to apply that precedent here. *See Redmond*, 574 F.2d at 901 n.12 ("We believe the proper test to be applied to the determination of what is 'religious' under [Title VII] can be derived from the Supreme Court decisions [addressing religion outside of the Title VII context]").

15

belief system, and the existence of religious literature and teachings supporting the belief." *Id*. A factfinder may also consider a plaintiff's past behavior, including whether they have "wavered in their dedication." *Id*.

Here, Defendant contests whether each Plaintiff's objection to the vaccine stemmed from a sincerely held religious belief. (Doc. 29, at 5 n.3.) Therefore, for Plaintiffs to prove their *prima facie* case, a factfinder would have to examine whether a belief is religious in the "person's own scheme of things." *Jones*, 1986 WL 398289, at *4. That all named Plaintiffs are Christian does not end the inquiry since whether a belief is "religious" is not established solely by looking at any official doctrine. *Jones,* 1986 WL 398289 at *4; (Doc. 12, at 5.); Regardless, there is nothing to suggest that all other class members share identical beliefs to Plaintiffs and, in fact, there is evidence that class members hold a wide range of beliefs. (Doc. 39, at 14.) For instance, one of the proposed class members is a member of The Satanic Temple. (*Id.*) Even if all class members did hold the same beliefs, a factfinder still would have to determine the sincerity of each person's beliefs. This requires an in depth look at each class member's background, including the recency of belief and how strictly the class member has adhered to the belief. *See Ackerman*, 16 F.4th at 181.

The issues of religious belief and sincerity would predominate over any shared questions of law and fact.

### 2. Undue Hardship and Reasonable Accommodations

In a failure-to-accommodate case, an employer is not liable for failing to provide an accommodation if it proves that any accommodation would cause its business undue hardship. *See Smith*, 827 F.2d at 1086. Because each employee has unique responsibilities and workplace interactions, determining what constitutes an undue hardship "necessarily depends upon its own

16
Case 3:22-cv-00426-TRM-JEM   Document 52   Filed 11/06/23   Page 16 of 20   PageID #: 1135

facts and circumstances, and . . . the unique circumstances of the individual employer-employee relationship." *Id.* at 1085 (quoting *Redmond*, 574 F.2d at 902–03). This is because "undue hardship" does not only refer to the economic cost of providing an accommodation. Employers may consider more intangible costs like the loss of office efficiency and the safety risk an accommodation can pose to other employees. *See Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 84 (1977) (finding undue hardship "in the form of lost efficiency in other jobs"); *see also EEOC. v. GEO Grp., Inc.*, 616 F.3d 265, 273 (3d Cir. 2010) ("A religious accommodation that creates a genuine safety or security risk can undoubtedly constitute an undue hardship"). The Supreme Court recently reaffirmed that the undue-hardship test must be applied "in a manner that takes into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size, and operating cost of an employer." *Groff*, 600 U.S. at 470.

For the same reason, "[t]he reasonableness of an employer's attempt at accommodation cannot be determined in a vacuum. Instead, it must be determined on a case-by-case basis." *Smith*, 827 F.2d at 1085; *see Riselay v. Sec'y of Health & Hum. Servs.*, No. 90–1779, 1991 WL 44319, at *5 (6th Cir. 1991) ("The term 'reasonable accommodation' is a relative term and cannot be given a hard and fast meaning. Each case involving such a determination necessarily depends upon its own facts and circumstances."). What is reasonable for one employee might be unreasonable for an employee with different duties and responsibilities. *Id*. As a result, "[t]he trier of fact is in the best position to weigh these considerations." *Smith*, 827 F.2d at 1085.

What it means for an accommodation to be "reasonable" and for a hardship to be "undue," is an inherently individualized analysis which depends on the duties and responsibilities of each employee. *See Smith*, 827 F.2d at 1085; *see also Haliye v. Celestica*

*Corp.*, No. 06-cv-4769, 2009 WL 1653528, at *8 (D. Minn. June 10, 2009). ("Each plaintiff's [failure to accommodate claim] presents a unique combination of factors that bear on the issues of reasonable accommodation and undue hardship.").

Here, Plaintiffs seek to represent a class which includes not just UCOR employees but also "staff augmentation employees and subcontractors." (Doc. 32, at 2.) Plaintiffs do not argue that class members have similar job responsibilities or worked under similar conditions. Indeed, even the three named Plaintiffs do not have the same job titles or responsibilities. (Doc. 29, at 4.) A factfinder would have to conduct an analysis of what would be a reasonable accommodation or an undue hardship for each employee, taking into account their different positions and responsibilities within UCOR. A finding in one case that an accommodation is reasonable or unreasonable for one employee has little bearing on whether the accommodation is reasonable for any other employee. *See Riselay*, 1991 WL 44319, at *5.

Plaintiffs suggest that, since Defendant developed a chart it used to assess undue hardship, "the question of undue hardship [is] easier to answer universally as to each putative class member." (Doc. 43, at 9.) It is true that Defendant calculated the fixed monetary costs of some accommodations. (Doc. 16-15 in *Speer I*.) For instance, Defendant calculated that the annual cost of weekly COVID-19 testing would be $19,240 per employee. (*Id.*) However, Plaintiffs point to no case law that would preclude Defendant from arguing undue hardship as it relates to each individual employee in the present litigation. Moreover, is it not clear that Defendant based its undue hardship analysis solely off this chart, given that Defendant states that its review committee also interviewed each employee and deliberated internally over whether to grant each request. (Doc. 39, at 6.)

Individualized determinations would inevitably predominate over any shared questions of law or fact.[12]

      b.    Superiority

Plaintiffs must also show that a class action is the superior method of adjudicating a claim. Fed. R. Civ. P. 23(b)(3). "In considering whether the superiority requirement of Rule 23(b)(3) is satisfied, courts consider 'the difficulties likely to be encountered in the management of a class action.'" *Young*, 693 F.3d at 545 (quoting *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 567 (6th Cir. 2007). "Where many individual inquiries are necessary, a class action is not a superior form of adjudication." *Id.* (citations omitted). Furthermore, "[w]here it is not

---

[12] Plaintiffs seem to suggest that if they proceed with their action under "the pattern-or-practice framework set out in *International Brotherhood of Teamsters*," sincere religious belief and undue hardship need not be considered. (Doc. 34, at 2–5); *see generally Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324 (1977). However, pattern or practice is simply an evidentiary framework used to show disparate treatment. *See Serrano v. Cintas Corp.*, 699 F.3d 884, 897 (6th Cir. 2012) (describing Teamsters pattern or practice claims as a "burden-shifting evidentiary framework"); *see also Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 183 (3d Cir. 2009) ("The Teamsters framework was judicially promulgated as a method of proof for pattern-or-practice claims"); *see also United States v. City of New York*, 717 F.3d 72, 83 (2d Cir. 2013) ("[A] pattern or practice case is not a separate and free-standing cause of action . . . but is really merely another method by which disparate treatment can be shown.") (citations omitted). It is true that pattern or practice is often used for class action suits under Title VII, *see e.g., Brown v. Nucor Corp.*, 785 F.3d 895 (4th Cir. 2015), but pattern or practice does not change the substantive elements a plaintiff must prove to establish a Title VII violation. *See Hohider*, 574 F.3d at 190 ("[T]he ADA, and not the *Teamsters* method of proof, dictates what substantive elements are necessary to reach a determination . . . of unlawful discrimination."). What a plaintiff must establish to prove a failure-to-accommodate claim arises from the explicit definition of religion in Title VII. 42 U.S.C. § 2000e(j) ("The term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate [] an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business."). The statute requires each Plaintiff to prove his beliefs are religious within the meaning of Title VII, and to avoid liability Defendant must prove an accommodation could not be granted without undue hardship. *Id.*; *see Redmond*, 574 F.2d at 901 (noting that the elements of failure-to-accommodate claims arise from 42 U.S.C. § 2000e(j)). Plaintiffs cannot prove their claims without addressing these issues.

economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device." *Id.* (quoting *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980)).

Plaintiffs assert that a class action "would achieve economies of time, effort, and expense, and promote uniformity." (Doc. 34, at 16 (quoting *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir.2010).) However, Plaintiffs have presented no evidence to the Court as to why this is the case. Given the number of individualized inquiries necessary to resolve each Plaintiff's claim, a class action would quickly devolve into a series of individual claims. Furthermore, given that Plaintiffs allege that they have suffered serious injuries and are seeking significant damages, it is certainly worth a plaintiff's time and effort to bring suit on his own. (Doc. 12, at 16.)

Because Plaintiffs have not established predominance or superiority, they cannot proceed under 23(b)(3).

## IV. CONCLUSION

For these reasons, Plaintiffs' motion for class certification (Doc. 18) is **DENIED**.[13]

**SO ORDERED.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**

---

[13] Despite not certifying the proposed class, the Court emphasizes that it does not pass judgment on the merits of any individual plaintiff's claims. The Court merely finds that Plaintiffs' claims are not suitable for class treatment.